# No. 14-0826(L)

**No. 14-0832(CON)**

## In the United States Court of Appeals for the Second Circuit

—————————————

CHEVRON CORPORATION,

*Plaintiff-Appellee,*

-AGAINST-

HUGO GERARDO CAMACHO NARANJO, JAVIER PIAGUAJE PAYAGUAJE, STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, PLLC,

*Defendants-Appellants,*

(*caption continues on inside cover*)

—————————————

On Appeal from the United States District Court for the Southern District of New York (The Honorable Lewis A. Kaplan)

—————————————

**BRIEF OF AMICI CURIAE RICHARD JANDA, JUAN C. PINTO AND CAROLINA CRUZ VINACCIA IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL**

—————————————

JESSE P. LEVINE
36 E. BROADWAY, SUITE 2C
NEW YORK, NY 10002
(917) 968-5141

WILLIAM B. SHIPLEY
RUE DE LA PRINTANIÈRE 6
GENTHOD, SWITZERLAND CH-1293
011.41.78.772.3740
WILLIAM.SHIPLEY@MAIL.MCGILL.CA
*Counsel for Amici Curiae*

STRATUS CONSULTING, INC., DOUGLAS BELTMAN, ANN MAEST,

*Defendants-Counter-Claimants*,

PABLO FAJARDO MENDOZA, LUIS YANZA, FRENTE DE DEFENSA DE LA AMAZONIA, AKA AMAZON DEFENSE FRONT, SELVA VIVA SELVIVA CIA, LTDA, MARIA AGUINDA SALAZAR, CARLOS GREFA HUATATOCA, CATALINA ANTONIA AGUINDA SALAZAR, LIDIA ALEXANDRA AGUIN AGUINDA, PATRICIO ALBERTO CHIMBO YUMBO, CLIDE RAMIRO AGUINDA AGUINDA, LUIS ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES GREFA TANGUILA, LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON AGUINDA AGUINDA, CELIA IRENE VIVEROS CUSANGUA, FRANCISCO MATIAS ALVARADO YUMBO, FRANCISCO ALVARADO YUMBO, OLGA GLORIA GREFA CERDA, LORENZO JOSE ALVARADO YUMBO, NARCISA AIDA TANGUILA NARVAEZ, BERTHA ANTONIA YUMBO TANGUILA, GLORIA LUCRECIA TANGUI GREFA, FRANCISO VICTOR TRANGUIL GREFA, ROSA TERESA CHIMBO TANGUILA, JOSE GABRIEL REVELO LLORE, MARIA CLELIA REASCOS REVELO, MARIA MAGDALENA RODRI BARCENES, JOSE MIGUEL IPIALES CHICAIZA, HELEODORO PATARON GUARACA, LUISA DELIA TANGUILA NARVAEZ, LOURDES BEATRIZ CHIMBO TANGUIL, MARIA HORTENCIA VIVER CUSANGUA, SEGUNDO ANGEL AMANTA MILAN, OCTAVIO ISMAEL CORDOVA HUANCA, ELIA ROBERTO PIYAHUA PAYAHUAJE, DANIEL CARLOS LUSITAND YAIGUAJE, BENANCIO FREDY CHIMBO GREFA, GUILLERMO VICENTE PAYAGUA LUSITANTE, DELFIN LEONIDAS PAYAGU PAYAGUAJE, ALFREDO DONALDO PAYAGUA PAYAGUAJE, MIGUEL MARIO PAYAGUAJE PAYAGUAJE, TEODORO GONZALO PIAGUAJ PAYAGUAJE, FERMIN PIAGUAJE PAYAGUAJE, REINALDO LUSITANDE YAIGUAJE, LUIS AGUSTIN PAYAGUA PIAGUAJE, EMILIO MARTIN LUSITAND YAIGUAJE, SIMON LUSITANDE YAIGUAJE, ARMANDO WILFRIDO PIAGUA PAYAGUAJE, ANGEL JUSTINO PIAGUAG LUCITANT, KEMPERI BAIHUA HUANI, AHUA BAIHUA CAIGA, PENTIBO BAIHUA MIIPO, DABOTA TEGA HUANI, AHUAME HUANI BAIHUA, APARA QUEMPERI YATE, BAI BAIHUA MIIPO, BEBANCA TEGA HUANI, COMITA HUANI YATE, COPE TEGA HUANI, EHUENGUINTO TEGA, GAWARE TEGA HUANI, MARTIN BAIHUA MIIPO, MENCAY BAIHUA TEGA, MENEMO HUANI BAIHUA, MIIPO YATEHUE KEMPERI, MINIHUA HUANI YATE, NAMA BAIHUA HUANI, NAMO HUANI YATE, OMARI APICA HUANI, OMENE BAIHUA HUANI, YEHUA TEGA HUANI, WAGUI COBA HUANI, WEICA APICA HUANI, TEPAA QUIMONTARI WAIWA, NENQUIMO VENANCIO NIHUA, COMPA GUIQUITA, CONTA NENQUIMO QUIMONTARI, DANIEL EHUENGEI, NANTOQUI NENQUIMO, OKATA QUIPA NIHUA, CAI BAIHUA QUEMPERI, OMAYIHUE BAIHUA, TAPARE AHUA YETE, TEWEYENE LUCIANA NAM TEGA, ABAMO OMENE, ONENCA ENOMENGA, PEGO ENOMENGA, WANE IMA, WINA ENOMENGA, CAHUIYA OMACA, MIMA YETI,

*Defendants*,

ANDREW WOODS, LAURA J. GARR, H5,

*Respondents*.

ii

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. iv

Statement of Interest ............................................................................................... 1

Introduction and Summary of Arguments ............................................................ 2

Argument .................................................................................................................. 6

    I. The Right of Appeal in Ecuador Allows for the Revocation and Revision of the Factual Record Produced at Trial ..................................... 6

    II. The Right of Appeal in Civil Law Jurisdictions Gives Rise to a *De Novo* Judgment. ...................................................................................... 11

    III. The Right of Appeal in a Civil Law Jurisdiction is Conceptually Different from that in a Common Law Jurisdiction. ............................... 13

    IV. There is No Basis for Concluding that the Ecuadorian Appellate Court Failed to Apply the Relevant Standard of Review Giving Rise to a *De Novo* Decision. ...................................................................... 18

Conclusion .............................................................................................................. 21

Certificate of Compliance ..................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

### Federal Case Law

*Chevron Corp v. Donziger* 974 F.Supp.2d 362 (S.D.N.Y.2014) ........ *passim*

*Chevron v. Naranjo* 667 F.3d. 232 (2d Cir. 2012)................................ 4, 18.

### Federal Rules

Fed. R. App. P. 29(c)(5)................................................................................1

### International Case Law

Ninth Chamber of Revision [Sala Novena de Revision de Tutelas], Guardianship Ruling of April 26/93 (COL) .............................................8

National Court of Ecuador [Corte Nacional de Ecuador] Ruling No. 174-2012 of November 12, 2013 (Ecuador)................................................3

National Court of Ecuador [Corte Nacional de Ecuador] Ruling No. 174-2012 of November 12, 2013 (Ecuador) ............................................ 20

Provincial Court of Justice of Sucumbios [Corte Provincial de Justicia de Sucumbios) Ruling No. 2011-0106 of January 3, 2012.................... 19

### International Statutory Authority

Code of Civil Procedure of Colombia, Article 350...................................9

Code of Civil Procedure of Ecuador, Article 114 ................................. 12

Code of Civil Procedure of Ecuador, Article 118 ................................. 12

Code of Civil Procedure of Ecuador, Article 323 ...................................9

Code of Civil Procedure of Ecuador, Article 838 ................................. 20

Code of Civil Procedure of Peru, Article 364 ............................................9

## Other Authorities

ACOSTA, BENINGO HUMBERTO CABRERA, TEORÍA GENERAL DEL PROCESO Y DE LA PRUEBA 289 (1996) ...........................................................................7

APPLE, JAMES G. & ROBERT P. DEYLING, A PRIMER ON THE CIVIL LAW SYSTEM 16 (Federal Judicial Center 1995)........................................ *passim*

Bustamente, José Rafael, "Ecuador" in CIVIL APPEAL PROCEDURES WORLDWIDE 262, 263 (Charles Platto ed., 1992).............................. 18, 19

CLAGETT, HELEN L., A GUIDE TO THE LAW AND LEGAL LITERATURE OF ECUADOR 17-18 (Library Of Congress 1947) ...............................................6

Dainow, Joseph, *The Civil Law and the Common Law: Some Points of Comparison*, 15 Am. J. Comp. L 424, 425 (1966-67) ...........................13-15

FLORIAN, EUGENIO, ELEMENTOS DE DERECHO PROCESAL PENAL 436 (1990) .............................................................................................................7

Glenn, H. Patrick, LEGAL TRADITIONS OF THE WORLD (4th ed. 2010). .............................................................................. 13

GRAY, JOHN C., THE NATURE AND SOURCES OF THE LAW 252 (1909) .................................................................................................. 14

Langbein, John H., *The German Advantage in Civil Procedure*, 52 U. Chi. L. Rev. 823, 856-57 (1985) ............................................................ 12, 17, 19

Martin, Jacques "France" in INTERNATIONAL ENCYCLOPEDIA OF LAWS: CIVIL PROCEDURE (Piet Taelman ed., 1995). ...................................... 12, 13

MERRYMAN, JOHN HENRY AND ROGELIO PÉREZ-PERDOMO, THE CIVIL LAW TRADITION: AN INTRODUCTION TO THE LEGAL SYSTEMS OF WESTERN EUROPE AND LATIN AMERICA 121 (3d ed. 2007) .................................. 4, 11

MERRYMAN, JOHN H., THE CIVIL LAW TRADITION: AN INTRODUCTION TO THE LEGAL SYSTEMS OF WESTERN EUROPE AND LATIN AMERICA (1969) ................................................................................. 10, 12

Mirow, M. C., *Borrowing Private Law in Latin America: Andres Bello's Use of the Code Napoleon in Drafting the Chilean Civil Code*, 61 La. L. Rev. 291 (2001) ........................................................................... 18

Pugh, Nina Nichols, *The Structure and Role of Courts of Appeal in Civil Law Systems*, 35 La. L. Rev. 1163, (1975)................................................. 12

Suárez, Ulises Cañosa *Apelacion en el Proceso Civil (Art. 351 a 362 C.P.C)*, 18-19 REVISTA DEL INSTITUTO COLOMBIANO DE DERECHO PROCESAL, 47 (1995).......................................................................8

Tetley, William, *Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified)*, 60 La. L. Rev. 21 (2000)............................................14-15

Torres, Ramiro Aguilar, *El recurso de apelación en materia penal* (July 6, 2014, 10:00am)......................................................................... 7, 8

## STATEMENT OF INTEREST

Proposed *Amici curiae* are Richard Janda, Associate Professor of Law at McGill University in Montreal, Canada; Juan C. Pinto, a doctoral candidate under the supervision of Professor Janda who is a member in good standing of the Bar of Colombia (Consejo Superior de la Judicatura); and Carolina Cruz Vinaccia, a Master's of Law graduate from the Faculty of Law of McGill University. McGill University's trans-systemic and comparative approach to the study of both Common Law and Civil Law provides *Amici* with a useful standpoint from which to advise the Court on this matter. *Amici* are motivated by a desire to ensure that the Second Circuit has a proper appreciation for the differences between Common Law and Civil Law appellate procedure.[1]

---

[1] Pursuant to Fed. R. App. P. 29(c)(5) *Amici* certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the preparation or submission of the brief; and no person other than *Amici* contributed money intended to fund the preparation or submission of the brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The purpose of this brief is to clarify the nature of appellate proceedings in Civil Law jurisdictions such as Ecuador. This is of much significance to the matter on appeal because Judge Kaplan's trial ruling turns in considerable degree upon his determination that an allegedly tainted trial process in Ecuador was not cured and could not be cured by the Ecuadorian appellate ruling.

Judge Kaplan concludes: "*[C]ontrary to defendants' assertion, the appellate court did not review the record* de novo. *Under Ecuadorian law, the appellate court was required to 'rule on the merit of the record.' Defendants contend that this required (and resulted in) a* de novo *review of the Judgment. But a review of the intermediate appellate decision makes clear that is not what transpired.*" *Chevron Corp v. Donziger,* SPA-426. This determination allowed Judge Kaplan to find that the appeal did not "break the chain of causation" between the allegedly tainted trial process and the ultimate determination by the National Court of Justice upholding the appellate ruling. SPA-428.

We put to one side Judge Kaplan's conclusion that the appellate court could not have conducted a *de novo* review since that court did

2

not analyze the fraud allegations. SPA-428-9. If indeed the Ecuadorian appellate court sought to come to its own conclusions of fact and law, leaving to other proceedings allegations of corruption against the trial judge, it is far from surprising that it would not have engaged in a forensic analysis of how the trial judge's decision was written. Furthermore, as Ecuador's highest court made clear, under Ecuadorian law the fraud allegations were to be addressed separately under Ecuador's Collusion Protection Act and was not a matter for judgment before the appellate tribunal [Ley para el Juzgamiento de la Colusión].[2]

We also put to one side Judge Kaplan's conclusion that as a matter of fact it would have been impossible for the three-judge panel of the appellate court to conduct a *de novo* review of the 188 page trial judgment and the trial record within the period available – this despite the fact that Judge Kaplan himself was able to produce a 586 page decision less than a month after the close of briefing after the end of a seven week bench trial. SPA-427.

---

[2] National Court of Ecuador [Corte Nacional de Ecuador] Ruling No. 174-2012 of November 12, 2013 (Ecuador) 95 and 121.

The focus of our role as *Amici* is upon whether indeed Ecuadorian civil procedure restricts the appellate court to the factual record produced at trial, as Judge Kaplan seemed to conclude based on a cursory reading of the Ecuador *Code of Civil Procedure*. SPA-426. To the contrary, consistent with nature of the Civil Law inquisitorial systems of justice, the provisions of that Code of Civil Procedure enable and indeed require the appellate panel to inquire for itself into the factual record. Indeed, the Second Circuit, in prior proceedings, has already made clear that the standard of review upon appeal under Ecuadorian law "is similar to the American standard of *de novo* review." *Chevron v. Naranjo* 667 F.3d. 232, 237 (2d Cir. 2012).

In Civil Law jurisdictions, such as that of Ecuador, an appeal re-examines both the legal and the factual issues of the case, resulting in a new, fully reasoned decision that replaces the original judgment.[3] The following sections of this brief provide background to the nature of the right of appeal in Civil Law jurisdictions in order to establish that the decision of the Ecuadorian court did indeed constitute a *de*

---

[3] *See* JOHN HENRY MERRYMAN AND ROGELIO PÉREZ-PERDOMO, THE CIVIL LAW TRADITION: AN INTRODUCTION TO THE LEGAL SYSTEMS OF WESTERN EUROPE AND LATIN AMERICA 121 (3d ed. 2007)

*novo* judgment.

The first part of this brief establishes that appeal under Ecuadorian law and that of parallel Civil Law jurisdictions allows for the revocation and revision of the factual record produced at trial. The second part establishes that this right of appeal gives rise to a *de novo* judgment. The third part emphasizes and summarizes the conceptual differences between appeal in Civil Law and Common Law jurisdictions. The final part of this brief establishes that the appellate tribunal followed the relevant standard of review, an issue addressed directly by the *Corte Nacional de Justicia,* Ecuador's Supreme Court.

## ARGUMENT

## I.  THE RIGHT OF APPEAL IN ECUADOR ALLOWS FOR THE REVOCATION AND REVISION OF THE FACTUAL RECORD PRODUCED AT TRIAL.

The inception of Civil Law systems in Latin American countries was closely linked to the Civil Law tradition of 19th-century central and western Europe, as it pertains to the content of civil, commercial, and procedural codes, legal education, the structure of the legal profession, the role of legal scholars, and the role of the judge in the judicial process.[4]

Ecuador adopted its first Civil Code in 1861, which was almost identical to the Civil Code of Chile. These Civil Codes were in turn based on the Napoleonic Code, with influences from Roman Law, the ancient Spanish codes, the Louisiana Civil Code and the Austrian and Prussian codes amongst others.[5]

---

[4] JAMES G. APPLE & ROBERT P. DEYLING, A PRIMER ON THE CIVIL LAW SYSTEM 16 (Federal Judicial Center 1995)

[5] HELEN L. CLAGETT, A GUIDE TO THE LAW AND LEGAL LITERATURE OF ECUADOR 17-18 (Library Of Congress 1947)

6

Civil Law commentators have tended to emphasize the fundamental character of the right of appeal.[6] The right of appeal is identified as the most ancient, classic, commonly used, and arguably most effective of remedies against errors at trial, since it leads to a second examination of the dispute.[7] Of course, its principal function is to grant to the parties redress against errors the trial judge might have incurred in the initial ruling.[8] The origin of the right of appeal is typically tied to the recognition under *ius gentium* recognition of the fallibility of human reasoning, and to the need for a mechanism to address this fallibility.[9] Appeal is the asserted to be the most effective

---

[6]Ramiro Aguilar Torres, *El recurso de apelación en materia penal* (July 6, 2014, 10:00am), http://www.usfq.edu.ec/publicaciones/iurisDictio/archivo_de_con tenidos/Documents/IurisDictio_6/El-reurso-de-apelacion-en-material-penal.pdf.

[7] Eugenio Florian affirms that: "The appeal is the classic and most commonly used recourse; it is also the most effective in that it leads to a second, more or less complete, examination of the matter. It has ancient roots, and thus we can find it already well defined in the Roman penal process during imperial times." EUGENIO FLORIAN, ELEMENTOS DE DERECHO PROCESAL PENAL 436 (1990)

[8] *See* BENINGO HUMBERTO CABRERA ACOSTA, TEORÍA GENERAL DEL PROCESO Y DE LA PRUEBA 289 (1996).

[9] The Constitutional Court of Colombia considers the right of appeal to be founded in the recognition of the fallibility of man in his expressions of reasoning; it is the *ius gentium's* recognition of the

remedy to redress errors, as it is carried out by a differently composed bench and by a judge or judges who are hierarchically superior to the trial judge, and therefore have greater experience and competence.[10]

According to Aguilar Torres,[11] *"The appeal arises through the act by which one of the litigants appears before the judge who has arrived at a disadvantageous sentence and asks that the process be remitted to a superior judge or tribunal, so that said higher tribunal can reread and re-examine the file; and, if a mistake is found, correct it, amending or revoking the decision in question.[12]"* [translation by *Amici*]

---

fallibility of human reasoning, and it seeing fit to establish a mechanism through which a more objective evaluation of the facts may take place. The importance of the right of appeal needs to be considered; it goes hand in hand with the search for justice that is intrinsic to judicial activity. Ninth Chamber of Revision [Sala Novena de Revision de Tutelas], Guardianship Ruling of April 26/93 (COL) at 6. Available online: http://www.corteconstitucional.gov.co/relatoria/1993/t-158-93.htm.

[10] *See* Ulises Cañosa Suárez *Apelacion en el Proceso Civil (Art. 351 a 362 C.P.C)*, 18-19 REVISTA DEL INSTITUTO COLOMBIANO DE DERECHO PROCESAL, 47 (1995)

[11] Ramiro Aguilar Torres is the Dean of the Faculty of Law (*Jurisprudencia*) of the International University of Ecuador and was a Professor at the Catholic University of Ecuador.

[12] Aguilar Torres, *supra* note 6 at 148.

Article 323 of the Code of Civil Procedure of Ecuador defines an appeal as: *"the claim that one of the litigants or another interested party makes before the judge or higher tribunal in order to revoke or revise the decree, decision, or sentence of the lower court."* [translation by *Amici*] Similar statements can be found in other Latin American Codes of Civil Procedure. Article 350 of the Code of Civil Procedure of Colombia states that *"the objective of an appeal is for the higher tribunal to study the matter decided upon in the ruling of the lower court, and to revoke or revise the decision if necessary."* [translation by *Amici*] Article 364 of the Code of Civil Procedure of Peru states that: *"the objective of the appeal is for the higher jurisdictional body to examine, by request of a party or a legitimate third party, the resolution of the dispute, with the intention that it be annulled or revoked, whether totally or partially."* [translation by *Amici*]

In these Civil Law jurisdictions, appeal can thus be defined as the ordinary remedy through which the aggrieved party can request that a higher court re-consider the matter decided upon and seek that

the trial judgment be revoked or revised in whole or in part.[13]

According to Civil Law rules of procedure, to point of appeal is to

contest the trial outcome; therefore, remedies can be defined as the

means through which the parties can attack rulings.[14] Civil Law

jurisdictions favor direct attacks such as the right of appeal and the

recourse in cassation or revision on questions of law,[15] over the

collateral attacks favored in the common law tradition.[16] Because a

---

[13] Cañosa Suarez, *supra* note 10 at 47.

[14] *Id.*

[15] Appellate courts of last resort more closely resembled their common-law counterparts, as they only consider questions of law. Some of them follow the French system of "cassation", by which the decision of the court of last resort is only on the question of law brought to it, not the case itself. Apple & Deyling, *supra* note 4 at 29.

[16] "(..) a litigant in a jurisdiction has somewhat broader powers of *direct attack* on a judgment than does a litigant in the Common Law jurisdictions: he is entitled to an appeal in which he may introduce new evidence in support of his case and in which he is entitled to a new consideration of the facts as well as the law. He may also be entitled to recourse in cassation or revision on questions of law. At the same time, he has a substantially narrower possibility of making an effective *collateral attack* on a judgment than is the case in the Common Law tradition.... The Civil Law attitude is, in general, that attacks on judgments should be restricted as much as possible to direct attacks, with collateral attacks limited to those instances in which it clearly appears that the procedural defects were of the sort that could not be adequately corrected in the course of the proceeding itself." JOHN H. MERRYMAN, THE CIVIL LAW TRADITION: AN

Civil Law appellate judge can receive new evidence attacking the substantive basis of the trial judgment, there is far less emphasis upon and indeed exploration of defects of process accompanying the judgment. Thus, for example, one should not be surprised that the Ecuadorian appellate panel did not focus on allegations of ghostwriting, as serious as those may be. Since it was empowered to review and correct the entirety of the factual record, its focus was understandably upon evidence of liability and the calculation of damages.

## II.  THE RIGHT OF APPEAL IN CIVIL LAW JURISDICTIONS GIVES RISE TO A *DE NOVO* JUDGMENT.

It is worth emphasizing that the term "appeal" differs in the Civil Law tradition from the understanding of the term in Common Law systems such as that of the United States.[17] In Civil Law systems, the right of appeal includes the right of reconsideration not only of legal issues, but of factual issues as well. The appellate bench examines all the evidence, arrives at its own decision regarding the

---

INTRODUCTION TO THE LEGAL SYSTEMS OF WESTERN EUROPE AND LATIN AMERICA 121-24 (1969)

[17] *See* MERRYMAN & PÉREZ-PERDOMO, *supra* note 3 at 121.

11

facts and their significance[18] and prepares its own fully reasoned opinion on the factual and legal issues.[19] In a Civil Law jurisdiction such as France, it has been said that the main effect of an appeal is devolution; *"the appeal devolves the dispute that has already been adjudicated in first instance to a court of appellate jurisdiction for it to be judged again in fact and in law."* This devolution applies to the whole dispute, unless otherwise limited in scope by the parties.[20]

Thus, *"fact-finding is reassigned from the court that did the primary fact-gathering"*[21] and the hearing is not an examination of errors but rather a second trial before a different judge.[22] In many Civil Law jurisdictions, including Ecuador (Article 114 Code of Civil Procedure), the parties may introduce new evidence at the appellate level, appellate judges may seek new evidence (Article 118 Code of Civil Procedure) and in some jurisdictions, including Ecuador parties

---

[18] *Id.*

[19] *See* Merryman, *supra* note 16 at 121-124**.**

[20] Jacques Martin, "France" in INTERNATIONAL ENCYCLOPEDIA OF LAWS: CIVIL PROCEDURE (Piet Taelman ed., 1995).

[21] John H. Langbein, *The German Advantage in Civil Procedure*, 52 U. Chi. L. Rev. 823, 856-57 (1985).

[22] *See* Nina Nichols Pugh, *The Structure and Role of Courts of Appeal in Civil Law Systems*, 35 La. L. Rev. 1163, (1975).

may bring forth new arguments and documents.[23] The decision of the appellate court thus substitutes for the original judgment.

## III. THE RIGHT TO APPEAL IN A CIVIL LAW JURISDICTION IS CONCEPTUALLY DIFFERENT FROM THAT IN A COMMON LAW JURISDICTION.

The meaning given to the right of appeal in Civil Law jurisdictions as opposed that given in Common Law jurisdictions can be traced to certain fundamental distinctions between Civil Law and Common Law traditions.[24]

In a Civil Law jurisdiction, the various Codes emphasize form, structure, and the enumeration of abstract and concrete principles of the law within a unified whole. Legislation is the main source of the law; the Civil Code is "a body of general principles, carefully arranged and closely integrated." [25] Conclusions about specific situations are gleaned from general principles through deductive reasoning.[26]

In Civil Law systems, the role of the jurist is to analyze basic

---

[23] *See* Martin, *supra* note 20.
[24] H. Patrick Glenn, LEGAL TRADITIONS OF THE WORLD (4th ed. 2010).
[25] Joseph Dainow, *The Civil Law and the Common Law: Some Points of Comparison*, 15 Am. J. Comp. L 424, 425 (1966-67).
[26] Apple & Deyling, *supra* note 4 at 19.

Codes and legislation in order to arrive at general theories and extract and expound upon the principles of law that can be derived from them. The work of jurists becomes the "doctrine" then used by judges, lawyers, and legislators in the exercise of their particular roles.[27] Doctrine is given significant priority over case law in Civil Law systems;[28] courts are not bound to follow precedent when interpreting written texts, although they may consider it.[29] Case law applies general principles of the law to a case, and serves only as a secondary source of law, notably as explanation.[30] Thus, an appellate body in a Civil Law jurisdiction is oriented toward the verifying the proper application of established legal principles to an accurate factual record. It does not conceive of itself as contributing the evolution of the law's articulation through establishing precedent.

This differs quite fundamentally from Common Law systems, where precedent informs decisions and legislation often amounts to

---

[27] *Id.*

[28] *See* William Tetley, *Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified)*, 60 La. L. Rev. 21 (2000). *See also* JOHN C. GRAY, THE NATURE AND SOURCES OF THE LAW 252 (1909).

[29] Dainow, *supra* note 25 at 426.

[30] *See* Tetley, *supra* note 28 at 22.

particular, specific rules rather than a unified normative framework.[31]
Of course, in a Common Law jurisdiction, the decisions of appellate
courts form a crucial body of precedent. Lower courts are compelled
to follow the decisions of higher courts, through the doctrine of *stare
decisis*, which effectively sets an order of priority of sources by
"reason of authority". The concept of *stare decisis* does not carry the
same weight in Civil Law jurisdictions; judgments enjoy only the
authority of reason. As the general principles in Civil Law systems
are embodied in national Codes and statutes, the confusion that
would ensue in Common Law if no priority of sources were
established is not an issue in Civil Law systems.[32]

The contrasting roles of Civil Law and Common Law judges
gives rise to a corollary concerning contrasting civil procedure. In a
Civil Law jurisdiction, there is typically no formal process of
discovery as in a Common Law jurisdiction. The judge is not the font
of law to whom the parties come in adversarial process to so as to
have their arguments heard. Rather, the Code is thought to be the

---

[31] Dainow, *supra* note 25 at 431
[32] *See* Tetley *supra* note 28 at 22.

15

font of law and the judge is the legal expert who can lead a process of inquiry into the facts relevant to legal determinations. In a Civil Law action, it is the judge, not the parties, who is at the origin of the proceedings and defines the issues as they arise. Initial pleadings tend to be formulated very generally.[33] Indeed, since the judicial process is inquisitorial, judges have control over the investigation and fact-finding.[34] They gather and assemble the record. In systems that use the inquisitorial process, it is the judge, not the lawyers, who interrogates the witnesses.[35]

In Civil Law systems, trials are carried out primarily in writing.[36] Fact-finding typically does not take place through adversarial proceedings or live witness testimony with cross-examination. Instead, judges "*supervise[…] the collection of evidence and preparation of a summary of the record on which a decision will be based.*"[37] This dependence on the written record facilitates a distinctive feature of Civil Law adjudication: *de novo* review of the entire judgment on

---

[33] Apple & Deyling *supra* note 4 at 26
[34] *Id.* at 28.
[35] *Id.* at 37.
[36] *Id.* at 27.
[37] *Id.* at 28

appeal.[38] That is, in the Civil Law tradition, appellate judges consider themselves to be equally or indeed more competent finders of fact than trial judges. There is no specific deference to the findings of fact at trial. As the noted comparative law scholar and Yale professor John Langbein points out: "*What makes this astonishingly liberal system of appellate review possible is the extreme economy of the technique … of recording in pithy summaries the evidence gathered at first instance. Retrial becomes for the most part only rereading.*"[39]

This also means that procedural and other errors are understood as curable on appeal without the need to order a new trial. This is a crucial point to consider in weighing the approach of the Ecuadorian appellate tribunal to the allegations of impropriety at trial. Indeed, in principle once an appellate tribunal has pronounced, to use Judge Kaplan's vocabulary, there is no "chain of causation" to break between alleged procedural taint on the findings of the trial judge and the findings of the appellate tribunal. There is no need for the appellate tribunal to inquire into alleged procedural fraud at trial – a

---

[38] *Id.*

[39] Langbein, *supra* note 21 at 857.

matter subject to corruption laws – since the appeal court finds facts for itself.

## IV. THERE IS NO BASIS FOR CONCLUDING THAT THE ECUADORIAN APPELLATE COURT FAILED TO APPLY THE RELEVANT STANDARD OF REVIEW GIVING RISE TO A *DE NOVO* DECISION.

In Ecuador, intermediate courts review the judgment of the court of first instance *por el mérito de los autos* (on the merits of the record, or proceedings)—a standard "similar to the American standard of *de novo* review."[40] The reviewing court receives the complete Trial Court file, that is, evidence, arguments and decisions on the facts and the law,[41] re-hears the case, and then makes its own decision.[42] Intermediate appeal courts can obtain additional testimony, accept and evaluate new evidence, and seek out expert opinions.[43] In this case, the intermediate tribunal made explicit that in the course of the

---

[40] *See Chevron v. Naranjo* 667 F.3d. 232, 237 (2d Circuit 2012). *Código de Procedimiento Civil*, art. 838; *see* M. C. Mirow, *Borrowing Private Law in Latin America: Andres Bello's Use of the Code Napoleon in Drafting the Chilean Civil Code*, 61 La. L. Rev. 291 (2001) (discussing Ecuador's adoption of the Chilean Civil Code of 1855, itself based heavily on the Napoleonic Code)

[41] José Rafael Bustamante, "Ecuador" in CIVIL APPEAL PROCEDURES WORLDWIDE 262, 263 (Charles Platto ed., 1992)

[42] *Id.* at 264.

[43] Apple & Deyling, *supra* note 4 at 28.

appellate proceedings, the defendant Chevron added some 20,000 pages of new evidence to the initial trial record of some 200,000 pages.[44] Furthermore, the intermediate court made explicit that it had itself reviewed additional evidence requested by the parties, including re-hearing testimony from experts, before rendering its decision.[45]

There was therefore in principle and in practice a re-determination of the law and facts, which substituted for the trial court's decision. [46] "*Normally there is no ordering of retrial or remission.*"[47] This corresponds to the notion that in Civil Law appeals, the appellate court conducts a complete *de novo* review of facts and law that results in a substitute judgment. Appellate review is collegial; the case is heard by a panel of several judges who tend to be specialized by subject matter.[48] Ecuador's *Corte Nacional de Justicia,*

---

[44] Provincial Court of Justice of Sucumbios [Corte Provincial de Justicia de Sucumbios) Ruling No. 2011-0106 of January 3, 2012 at 2.
[45] *Id.*
[46] Bustamente *supra* note 41 at 266.
[47] *Id.*
[48] "Because the panels are specialized by subject matter, chances are that some of the judges who decide the case will be masters of the particular field of law." Langbein, *supra* note 20 at 857.

the nation's Supreme Court, then acts as a "court of cassation," in which only questions of law arising from the judgments of the intermediate courts may be appealed.

In the decision below, Judge Kaplan seems to infer that appeal *por el mérito de los autos* pursuant to Article 838 of Ecuador's Code of Civil Procedure means appeal on the basis of the existing factual record determined at trial, and thus *not* the equivalent of *de novo* review. *Chevron Corp v. Donziger*, SPA-426. To the contrary, the Ecuadorian intermediate appellate court was charged to review the merits of the entire record, including the factual record, and in fact did so. *Chevron Corp v. Donziger*, SPA-464.

More significantly still, the *Corte Nacional* concluded that the intermediate court properly exercised the appropriate standard of review—contradicting the District Court's finding that in this case *de novo* review did not take place.[49] Furthermore, the *Corte Nacional* explained that the appellate court's judgment constituted a new, substitute judgment and that Chevron was therefore attacking the

---

[49] National Court of Ecuador [Corte Nacional de Ecuador] Ruling No. 174-2012 of November 12, 2013 (Ecuador).

wrong judgment: "*The court decision sought to be annulled here is the one rendered by the court of appeals, and not the one issued by a trial court, something which the cassation appellant has confused in this allegation.*"[50]

## CONCLUSION

The Ecuadorian appellate tribunal, like other Civil Law courts of appeal, was charged with the task of reviewing the facts and the application of the law *de novo*. The appellate tribunal explicitly put to one side the issue of the allegedly tainted process at trial, for which other proceedings become the relevant locus of investigation and potential sanction. Indeed, once all of the evidence concerning allegedly tainted proceedings was put to one side and the central questions of liability and scope of damages were reviewed, the evidentiary and legal issues were entirely manageable for the appellate panel. The *Corte Nacional de Justicia* found that there was no basis for finding any failure on the part of the appellate court to exercise the proper standard of review of appeal. There is, therefore,

---

[50] *Id* at 150.

no chain of causation between the alleged procedural taints at trial and the ultimate decision of the Ecuadorian judiciary.

Respectfully submitted,


*/s/ Jesse Levine*
Jesse P. Levine
William B. Shipley
Counsel to *Amici Curiae*

*Amici Curaie*

Richard Janda
Juan C. Pinto
Carolina Cruz Vinaccia


Dated: July 9, 2014

# CERTIFICATE OF COMPLIANCE

I, Jesse P. Levine, counsel for *Amici* herein, certify pursuant to Federal Rule of Appellate Procedure 29(d) that the attached amicus brief is proportionally spaced, has a type face of 14 points or more and contains 7,000 words or less.

Date:      July 9, 2014

<u>/s/ Jesse Levine</u>

Jesse P. Levine
Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2014, I caused to be electronically filed the foregoing motion for leave to file an amicus brief with the Clerk of the Court of the U.S. Court of Appeals for the Second Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

/s/ *Jesse Levine*
Jesse P. Levine
Counsel to *Amici Curiae*